UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

OLUWASHOLA OLANIYI AJAYI,

    *Plaintiff*,

v.

DISTRICT OF COLUMBIA et al.,

    *Defendants*.

Civil Action No. 20-1019 (TJK)

### MEMORANDUM OPINION

    Oluwashola Olaniyi Ajayi was arrested in June 2015 by the Metropolitan Police Department for pandering. In April 2020, he filed this pro se action alleging that as a result of his arrest and prosecution, he was the victim of a series of torts and violations of the U.S. Constitution. Defendants moved to dismiss for insufficient service of process and for failure to state a claim. For the reasons explained below, the Court will grant Defendants' motion because Ajayi's claims are barred by the statute of limitations.

**I.    Background**

    The Court accepts as true the facts as pled in Ajayi's complaint. On June 26, 2015, Officer Roy Melvin and an unnamed Metropolitan Police Department ("MPD") officer, acting on information supplied by an unidentified informant, "proceeded to room 308" of the Embassy Suites hotel in northwest Washington, D.C., and with "a hard knock . . . announced 'Police, Open the door.'" ECF No. 1 ("Compl.") at 10. Ajayi opened the door and was arrested, along with two female guests and the informant. *Id.* Officer Melvin "seized" Ajayi's "I-Phone, wallet containing $200.00 with ID, Debit card, [and] college ID." *Id.* According to Ajayi, the arrest injured him because the police handcuffed him too tightly and he also suffered "Emotional

Distress from the arrest, injury and being locked up." ECF No. 1-1 at 2. The next day, Ajayi was charged in D.C. Superior Court with one count of pandering and released. *See* ECF No. 42-2. A judge set his case for trial in early 2017, but on July 14, 2016, the government dismissed it. *See id.* at 6.

Ajayi filed this lawsuit on April 16, 2020 while serving a prison sentence in Maryland for an unrelated crime. *See* Compl. at 6. In a scattershot complaint, he claims intentional infliction of emotional distress, illegal detainment, false arrest, invasion of privacy, malicious prosecution, false imprisonment, "Intentional Misrepresentation," "Negligent Detention," negligence, civil conspiracy, and he asserts that he was the victim of both an unreasonable search and seizure in violation of the Fourth Amendment, and a deprivation of property without due process in violation of the Fifth Amendment. *Id.* at 6-7. He sues the District of Columbia, Mayor Muriel Bowser, MPD, former Chief Peter Newsham, Officer Melvin, and the unidentified informant ("Defendants"). *Id*. at 1.

## II.     Legal Standards

Federal Rule of Civil Procedure 12(b)(5) governs a motion to dismiss for insufficient service of process. The plaintiff bears the burden of proving that he has affected proper service. *See Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003) (citing *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987)). "To do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 [(which governs summonses)] and any other applicable provision of law." *Light*, 816 F.2d at 751. "[U]nless the procedural requirements for effective service of process are satisfied, a court lacks authority to exercise personal jurisdiction over the defendant." *Candido v. District of Columbia*, 242 F.R.D. 151, 160 (D.D.C. 2007). Failure to effect proper service is thus a "fatal" jurisdictional defect, and is grounds for dismissal.

2

*See Tom Sawyer Prods., Inc. v. Progressive Partners Achieving Solutions, Inc.*, 550 F. Supp. 2d 23, 26 (D.D.C. 2008).

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). "In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). "But the Court need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Id.* "To survive a motion to dismiss, a complaint must have 'facial plausibility,' meaning it must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In deciding a motion to dismiss under Rule 12(b)(6), the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

A defendant "may raise a statute of limitations as an affirmative defense via a Rule 12(b)(6) motion only when the facts that give rise to the defense are clear from the face of the complaint." *Wash. Metro. Area Transit Auth. v. Ark Union Station, Inc.*, 268 F. Supp. 3d 196,

203 (D.D.C. 2017) (citing *Mizell v. SunTrust Bank*, 26 F. Supp. 3d 80, 85 (D.D.C. 2014)). "If no reasonable person could disagree on the date on which the cause of action accrued, the court may dismiss a claim on statute of limitations grounds." *Id.* at 204 (quoting *DePippo v. Chertoff*, 453 F. Supp. 2d 30, 33 (D.D.C. 2006)). "A complaint will be dismissed under Rule 12(b)(6) as 'conclusively time-barred' if 'a trial court determines that the allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Momenian v. Davidson*, 878 F.3d 381, 387 (D.C. Cir. 2017) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)).

### III.  Analysis

#### A.  The Court May Dismiss the Complaint as Time-Barred Before Resolving Whether All Defendants Were Properly Served

"[J]urisdictional questions ordinarily must precede merits determinations in dispositional order." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). "Rather than assuming (without deciding) jurisdiction and going on to address the merits . . . a court must first establish as an antecedent matter that it has jurisdiction." *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018) (internal quotation marks omitted). But the Court "has leeway to choose among threshold grounds for denying audience to a case on the merits," *Sinochem*, 549 U.S. at 431, and "may address certain nonjurisdictional, threshold issues so long as those issues can occasion a dismissal short of reaching the merits." *Matar v. Transp. Sec. Admin.*, 910 F.3d 538, 541 (D.C. Cir. 2018) (internal quotation marks omitted and alterations adopted).

Defendants moved to dismiss under both Rule 12(b)(5) for failure to effect proper service, and under Rule 12(b)(6) as time-barred by the applicable statute of limitations. But as Defendants have confirmed since the filing of their motion, Ajayi has properly served the

4

District of Columbia and Mayor Bowser. ECF No. 69. Thus, the Court may assert personal jurisdiction over them. *See* D.C. Super. Ct. R. Civ. P. 4(l)(1).[1] In contrast, on the record before the Court, Ajayi does not appear to have properly served MPD,[2] former Chief Newsham or Officer Melvin.[3] Thus, whether the Court may exercise personal jurisdiction over them is unclear.

Even so, the timeliness of Ajayi's claims is a nonjurisdictional threshold issue that the Court can reach as to all Defendants, because dismissing claims as time-barred under Rule 12(b)(6) "does not involve any consideration of the merits of [Ajayi's] claims." *Matar*, 910 F.3d at 541; *see also Elec. Privacy Info. Ctr. v. Fed. Aviation Admin.*, 821 F.3d 39, 41 n.2 (D.C. Cir.

---

[1] Under Rule 4(e)(1) of the Federal Rules of Civil Procedure, an individual within a judicial district of the United States may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."

[2] In any event, service on MPD does not matter because it cannot be sued. "Although plaintiff has named the MPD as a defendant, it is well settled that the MPD is non sui juris and, therefore, cannot sue or be sued." *Heenan v. Leo*, 525 F. Supp. 2d 110, 112 (D.D.C. 2007) (citing *McRae v. Olive*, 368 F. Supp. 2d 91, 94 (D.D.C. 2005)). Thus, the claims against MPD must be dismissed for his reason alone. Similarly, Ajayi has sued an unidentified police informant. But the Local Rules of this Court require that a plaintiff "filing pro se in forma pauperis must provide in the [complaint's] caption the name and full residence address or official address of each party." LCvR 5.1(c)(1). Ajayi has not provided this information. For this reason, the claims against the informant must be dismissed as well.

[3] On the record before the Court, Ajayi's attempts at service on Chief Newsham and Officer Melvin appear to fall short because the return receipts do not include their signatures or those of anyone authorized to receive service of process for them. *See* ECF Nos. 42-1 and 69-1. For service by certified mail in the District of Columbia, unless service is acknowledged, proof of service must state "if the return receipt does not purport to be signed by the party named in the summons, the specific facts from which the court can determine that the person who signed the receipt meets the appropriate qualifications for receipt of process set out in Rule 4(e)–(j)." D.C. Super. Ct. R. Civ. P. 4(l)(1). Ajayi has not provided such facts, and Chief Newsham and Officer Melvin and instead provide declarations explaining that the individuals who signed the receipts were not authorized to receive service of process for them. *See* ECF Nos. 42-1 and 69-1; *see also* D.C. Super. Ct. R. Civ. P. 4(e).

2016) (noting an "'arduous inquiry'" into standing could be avoided because timeliness was an "alternative and 'straightforward' threshold ground for dismissal"); *Ajenifuja v. Dangote*, 485 F. Supp. 3d 120, 125 (D.D.C. 2020) (dismissing claims on statute of limitations before turning to service issues); *Olson v. United States*, 953 F. Supp. 2d 223, 229 (D.D.C. 2013) (dismissing claims on statute of limitations grounds before turning to jurisdictional challenges). Indeed, proceeding this way is especially efficient here, because it is commonplace in this district to allow a pro se plaintiff the opportunity to perfect service, rather than dismiss for lack of service. *See, e.g.*, *Prosper v. Att'y Gen. of Antigua & Barbuda*, No. 20-cv-2279, 2021 WL 2530612, at *1 (D.D.C. June 21, 2021). Thus, the Court will consider whether Ajayi's claims are time-barred by the statute of limitations.

### B. Ajayi's Constitutional Claims Are Time-Barred

Ajayi's claims under the Fourth and Fifth Amendments are authorized by 42 U.S.C. § 1983, and the "law governing the statute of limitations and claim accrual" in such cases "is a complex patchwork of federal law and state law." *Earle v. District of Columbia*., 707 F.3d 299, 304 (D.C. Cir. 2012). Because § 1983 sets no limitations period, the Supreme Court has "determined that the appropriate statute of limitations for a claim brought under section 1983 'is that which the State provides for personal-injury torts.'" *Id.* at 305 (quoting *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). And where, as in the District of Columbia, more than one limitations period exists, courts "should borrow the general or residual statute for personal injury actions." *Id.*; *see* D. C. Code § 12–301(4) (setting one-year period for listed torts); *id*. § 12–301(8) (setting three-year period for actions "not otherwise specially prescribed"). The D.C. Circuit has made clear that the District's three-year residual statute of limitations applies to a § 1983 claim, as do

its "tolling rules . . . so long as [they] are not inconsistent with the policies underlying § 1983." *Earle*, 707 F.3d. at 305 (cleaned up).

Unlike the statute of limitations, "the accrual date of a § 1983 action is a question of federal law that is not resolved by reference to state law." *Id*.  A claim accrues "when the plaintiff has 'a complete and present cause of action,' that is, 'when the plaintiff can file suit and obtain relief[,]'" *id*. (quoting *Wallace*, 549 U.S. at 388), "even though the full extent of the injury is not then known or predictable," *Wallace*, 549 U.S. at 391 (citation omitted).  In other words, a claim accrues "when the factual and legal prerequisites for filing suit are in place." *Earle*, 707 F.3d. at 306.

Thus, most (if not all) of Ajayi's constitutional claims would have accrued, at the latest, by June 27, 2015, the day after he was arrested, and on which he appeared before a Superior Court judge and was charged, appointed counsel, and released on a personal recognizance bond. ECF No. 42-2.[4]  If so, the statute of limitations on those claims would have run three years later, on June 27, 2018.  Thus, the statute of limitations would have expired over a year and a half before he sued on April 16, 2020.  And even if some of his constitutional claims accrued on July 14, 2016, when his criminal case was dismissed, the statute of limitations would still have run almost nine months before he sued.  In either case, Ajayi's constitutional claims must be dismissed as time-barred.

C.  **Ajayi's State Law Claims Are Time-Barred**

Similarly, Ajayi's claims grounded in state law are subject to various statutes of limitations, the longest of which is three years.  D.C. Code § 12-301; *see Rendall-Speranza v. Nassim*, 107 F.3d 913, 920 (D.C. Cir. 1997).  And under District of Columbia law, "a claim is

---

[4] The Court takes judicial notice of the docket in Ajayi's related criminal case.

7

deemed to have accrued 'from the moment a party has either actual notice of [his] cause of action, or is deemed to be on inquiry notice by failing to act reasonably under the circumstances in investigating matters affecting [his] affairs, where such an investigation, if conducted, would have led to actual notice.'" *Crafton v. District of Columbia*, 132 F. Supp. 3d 1, 9 (D.D.C. 2015) (quoting *Medhin v. Hailu*, 26 A.3d 307, 310 (D.C. 2011)).

As discussed above, Ajayi knew or should have known about most of his claims, at the latest, on June 27, 2015. *See Curtis v. Lanier*, 535 F. Supp. 2d 89, 94 (D.D.C. 2008) (statute of limitations for false arrest and false imprisonment accrues "when the individual is arrested or imprisoned") (citing *Shulman v. Miskell*, 626 F.2d 173, 176 (D.C. Cir. 1980)). Other claims may not have accrued until July 14, 2016, when the government dismissed his criminal case. *See id.* at 94 ("The statute of limitations for malicious prosecution begins from the time that the underlying criminal or civil action is disposed of in favor of the plaintiff.") (citing *Shulman*, 626 F.2d at 176). But either way, Ajayi's state law claims must be dismissed as time-barred as well.

### D.     Tolling

Finally, neither the complaint nor Ayayi provides any basis to toll the statute of limitations. Courts "generally refer[] to state law for tolling rules, just as . . . for the length of statutes of limitations." *Wallace*, 549 U.S. at 387; *see also Earle*, 707 F.3d at 309 (applying District of Columbia common law tolling rules to § 1983 action where underlying events occurred in the District of Columbia). D.C. Code § 12–302(a)(3) does provide for tolling of the time limits relevant here when a complainant is "imprisoned . . . at the time the right of action accrues." *See also Simpson v. D.C. Metro. Police Dep't*, 789 F. Supp. 5, 8 (D.D.C. 1992). But the docket in Ajayi's criminal case reflects that he was released after his hearing on June 27, 2015. ECF No. 42-2. And although Ajayi was incarcerated in Maryland when he filed this

action nearly five years later, the District's statute of limitations is not "tolled for a person released from custody and then rearrested on a separate [wholly unrelated] charge." *Arnold v. District of Columbia*, 211 F. Supp. 2d 144, 148 (D.D.C. 2002). *See also Dist. of Columbia v. Tinker*, 691 A.2d 57, 64–65 (D.C. 1997) (finding that upon release plaintiff was "immediately able to pursue his claim against the District, and the time within which the law allowed him to do so—i.e., the statute of limitations—began to run at the moment of his release. [Plaintiff] has cited no case, and we have found none, supporting his argument that the statute was tolled anew upon his re-arrest five weeks later.").[5]

## IV.     Conclusion

For all these reasons, Defendants' motion to dismiss will be granted. A separate order will issue.

/s/ Timothy J. Kelly<br>
TIMOTHY J. KELLY<br>
United States District Judge

Date: August 31, 2021

---

[5] In addition, to the extent Ajayi requests that the Court equitably toll the statute of limitations, he suggests no coherent basis to do so. Ajayi attributes his delay in filing suit "to the exhaustion of administrative remedies procedures, I had to follow to bring this suit, and unrelated Maryland Federal Civil litigation to fruition." ECF No. 1-1 at 2. District of Columbia law does not typically recognize an equitable-tolling exception to the statute of limitations that govern Ajayi's claims. *See Bundy v. Sessions*, 387 F. Supp. 3d 121, 125 (D.D.C. 2019); *Nattah v. Bush*, 770 F. Supp. 2d 193, 208 (D.D.C. 2011); *Johnson v. Marcheta Invs. Ltd. P'ship*, 711 A.2d 109, 112 (D.C. 1998). And even when equitable tolling is potentially applicable, courts may apply it "only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988). Ajayi provides no basis to conclude this is such a circumstance. It is unclear to what "administrative remedies procedures" or "unrelated Maryland Federal Civil litigation" he refers, or how they would have prevented him from filing this suit.